IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:12-CV-146-WKW |
| ) | [WO] |
| NINETEEN THOUSAND EIGHT ) | |
| HUNDRED FIFTY FIVE ($19,855.00) ) | |
| DOLLARS IN UNITED STATES ) | |
| CURRENCY, ) | |
| ) | |
| Defendant. ) | |

### **MEMORANDUM OPINION AND ORDER**

This is a civil forfeiture action brought *in rem* against a sum of money seized from Claimant, Michael Dale Bennett. Plaintiff, the United States of America, seeks forfeiture of the defendant *res* pursuant to 21 U.S.C. § 881(a)(6). Claimant has filed three motions to dismiss: two based on Federal Rule of Civil Procedure 12(b)(6) arguing that the Government has failed to state a claim upon which relief can be granted (Doc. # 9), and a third based on Rule 12(b)(1) asserting that the court lacks jurisdiction over the *res* (Doc. # 13). Claimant's motions are due to be denied.

### **I. JURISDICTION AND VENUE**

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355, and 21 U.S.C. § 881. Claimant argues that this court lacks *in rem* jurisdiction, but for

the reasons set forth in Part IV.A., the court finds that it does have *in rem* jurisdiction. Venue is proper pursuant to 28 U.S.C. §§ 1355 and 1395.

## II.  STANDARDS OF REVIEW

### A.  <u>Motion to Dismiss for Lack of Jurisdiction</u>

Claimant facially attacks the complaint, arguing that the Circuit Court of Lowndes County, Alabama, had prior, exclusive *in rem* jurisdiction, which attached automatically when Lowndes County authorities seized the *res*.

In a facial attack, the question is whether the complaint sufficiently alleges a basis for jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). As when considering a motion to dismiss for failure to state a claim, on a Rule 12(b)(1) facial attack, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded facts as true. *Id.*

### B.  <u>Motion to Dismiss for Failure to State a Claim</u>

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, "accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Notwithstanding the Rule 12(b)(6) standard, Supplemental Rule G(2) also governs the sufficiency of the complaint in civil forfeiture cases.[1]  Fed. Supp. R. G(8)(b)(ii).  Supplemental Rule G(2) requires a verified complaint stating the grounds for subject matter jurisdiction, *in rem* jurisdiction, and venue.  Fed. Supp. R. G(2)(a) & (b).  The complaint must also describe the property with reasonable particularity; if the property is tangible, allege its current location and its location when seizure occurred; and identify the statute enabling forfeiture.  Fed. Supp. R. G(2)(c)–(e).  Finally, the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Fed. Supp. R. G(2)(f).  "No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D); Fed. Supp. R. G(8)(b)(ii).

---

[1] The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions apply, among others, to all *in rem* forfeiture actions brought pursuant to a federal statute. Fed. Supp. R. A(1)(b).  Where the Supplemental Rules apply, the Federal Rules of Civil Procedure also apply, "except to the extent that they are inconsistent with" the Supplemental Rules.  Fed. Supp. R. A(2).

## III.  FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2011, Deputy H. A. Cox of the Lowndes County, Alabama Sheriff's Department stopped a car on Interstate 65 in Lowndes County for following too closely.  Adrian Dion Pettaway was driving, and Claimant was riding in the passenger seat.  When Mr. Pettaway handed his driver's license and proof of insurance to Deputy Cox, Mr. Pettaway's hand shook tremendously, and the smell of marijuana emanated from the vehicle.  (Doc. # 1.)

Upon questioning, Mr. Pettaway told Deputy Cox that he had smoked marijuana within ninety minutes of the stop.  Deputy Cox asked the men several more questions.  Although the men denied having any more marijuana, Claimant admitted to carrying $8,000 to $10,000 in his bag.  (Doc. # 1.)  Regarding prior arrests, Mr. Pettaway told Deputy Cox that he was previously arrested on drug charges,[2] while Claimant replied that he had never been arrested.  In fact, Claimant Michael Dale Bennett, also known as Roderick Neal Bennett, was arrested in 1999 in Escambia County, Florida, for marijuana distribution.[3]

---

[2] Mr. Pettaway had a 2004 conviction for possession of cocaine and drug trafficking in Meriwether County, Georgia.  (Doc. # 1.)

[3] He entered a guilty plea in July that year to a first degree misdemeanor, adjudication withheld.  (Doc. # 1.)

After dispatch ran criminal background inquiries on the men, Deputy Cox learned that there was an outstanding warrant for Mr. Pettaway's arrest in Escambia, Florida, for aggravated assault with a deadly weapon and that both men had positive criminal histories for illegal drugs as well as aliases.  (Doc. # 1.)  Dispatch also informed Deputy Cox – based on a search of the vehicle's license plate number – that Mr. Pettaway had rented the car from Enterprise Car Rentals, though Mr. Pettaway did not have a rental agreement with him.  (Doc. # 1.)

At some point, Deputy Cox searched the vehicle.[4]  He found a black backpack behind the passenger's seat and, inside the bag, a microwave popcorn box.  The box contained cash – the defendant *res* – in four stacks secured with rubber bands.  (Doc. # 1.)  Rather than the $8,000 or $10,000 Claimant indicated he carried, there was almost $20,000.  The search yielded no drugs or drug paraphernalia, but when a trained dog arrived on the scene, the dog alerted to the presence of drugs in the vehicle and on the currency.  (Doc. # 1.)

The state law enforcement officers seized the cash pursuant to their authority under Alabama law.  After the September 2011 traffic stop but before February 2012 – when the Government filed its forfeiture complaint – the state authorities turned the

---

[4] While the forfeiture complaint does not state that Deputy Cox conducted the search upon consent, as a search incident to a lawful arrest, or under some other exception to the warrant requirement, Claimant has not challenged the constitutionality of the search.

*res* over to the United States Marshals Service, which now has custody of the *res*. (Doc. # 1.) The United States seeks forfeiture pursuant to 21 U.S.C. § 881(a)(6). At the time the United States brought its forfeiture complaint, no state authorities had filed any action in state court to effectuate forfeiture of the *res*, nor had Claimant filed any action in state court to recover the *res*.

After the Government filed its verified complaint, Claimant timely filed a verified claim contesting the forfeiture action in accordance with Supplemental Rule G(5)(a). (Doc. # 6.) Claimant next filed two motions to dismiss for failure to state a claim.[5] (Docs. # 9 & 13.) The Government responded to Claimant's motions (Doc. # 17), and then Claimant filed a third motion to dismiss alleging that the court lacked *in rem* jurisdiction (Doc. # 19).

Claimant filed two of his three motions to dismiss after the deadline imposed by Supplemental Rule G(5)(b), which states that "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Under the terms of the same rule, a claimant waives any objection to *in rem* jurisdiction if he does not object by motion or in an answer. Fed. Supp. R. G(5)(b). Claimant filed his claim on March 15, 2012, making the deadline for filing a Rule 12

---

[5] The motions were filed twenty-two days apart and were virtually identical, except that the second included exhibits. Pursuant to Rule 12(d), the court will exclude the exhibits from its consideration and treat the motion as a Rule 12(b)(6) motion, rather than converting it to a Rule 56 motion for summary judgment.

motion April 5, 2012. Though Claimant's first Rule 12 motion, filed on March 28, 2012 (Doc. # 9), came within the deadline, it did not raise any arguments regarding *in rem* jurisdiction. The next two came fourteen and thirty-four days late, respectively. (Docs. # 13 & 19.) Only the third raised a jurisdictional argument.[6]

On June 5, 2012, Claimant filed a complaint in the Circuit Court of Lowndes County for the return of his seized property. (Doc. # 38, Ex. 1.)

## IV. DISCUSSION

### A.  *In rem* Jurisdiction

Alabama law "neither expressly nor impliedly prohibits a state or local law-enforcement agency from transferring seized property to federal authorities." *Green v. City of Montgomery*, 55 So. 3d 256, 261 (Ala. Civ. App. 2009) (citing Ala. Code § 20-2-93). The state's general forfeiture provision allows state and local officials to "transfer seized property to another governmental entity," including a federal entity, "so long as the disposition of the property is 'in accordance with law.'" *Id.* (quoting Ala. Code § 20-2-93(d)). The disposition need not be in accordance with Alabama law. *Id.* Federal adoption of a state forfeiture, implicitly authorized by 21

---

[6] It appears Claimant waived his objection to *in rem* jurisdiction by not timely raising it. *See* Fed. Supp. R. G(5)(b). Because the Government has not argued waiver, the jurisdictional question is taken up on its merits below.

U.S.C. § 881(e)(1)(A), has the same effect as if the seizure had originally been made by the United States.

Despite this adoptive forfeiture system, only one court may have *in rem* jurisdiction over a *res,* and the first court to acquire jurisdiction maintains it to the exclusion of other courts. *Penn Gen. Cas. Co. v. Penn.*, 294 U.S. 189, 195 (1935); *see also Madewell v. Downs*, 68 F.3d 1030, 1041 n.13 (8th Cir. 1995) (collecting cases). Claimant asserts that seizure of the *res* by Lowndes County authorities immediately vested jurisdiction over the *res* in the state court of Lowndes County, thus depriving this court of jurisdiction. But the Alabama Court of Civil Appeals already has established that, contrary to Claimant's argument, jurisdiction does not vest in the state court immediately upon seizure by state authorities. *See Green*, 55 So. 3d at 259 (remarking that "Alabama law requires a two-step process of possession and then filing of an *in rem* action" to vest jurisdiction in an Alabama court).

In *Green*, City of Montgomery police officers seized $30,000 during a traffic stop and then transferred the seized currency to federal authorities to effect adoptive forfeiture. *Id.* Adoptive forfeiture failed, however, because before federal *in rem* jurisdiction could attach, Green and the other occupants of the vehicle filed an *in rem* action in state court seeking return of the money. The court reasoned that federal *in rem* jurisdiction requires only possession by federal authorities and attaches when the

8

*res* "is 'taken or detained' during a time when no other court has jurisdiction over the *res*." *Id.* at 264 (quoting 21 U.S.C. § 881(c)). Because Green filed his state court action before federal approval of the adoptive seizure request and before federal authorities had actual possession of the *res*, the state court had jurisdiction over the *res* earlier in time. *Id.*

Jurisdiction does not vest automatically in a state court under Alabama law. For if it did, it would have been irrelevant that Green arrived at the state courthouse before the United States took possession of the *res*. Further application of *Green* resolves this case. Here, unlike *Green*, both federal approval of the adoptive seizure and federal possession of the *res* preceded any action in state court. Thus, jurisdiction over the *res* attached in this court when no other court had jurisdiction.

Claimant does not cite, and the court could not find, any ruling by the Alabama Supreme Court or the Supreme Court of the United States that calls these principles from *Green* into question.[7] Moreover, the more recent precedent of the Alabama

---

[7] Though Claimant cites numerous Alabama Supreme Court cases, none establishes that Alabama law prohibits state authorities from cooperating with federal authorities to achieve adoptive forfeiture, or that jurisdiction automatically vests in state court upon seizure by state authorities. *See, e.g., State v. 2018 Rainbow Drive*, 740 So. 2d 1025, 1028 (Ala. 1999) (holding that, under Alabama law, a city lacked standing to file a condemnation and forfeiture action); *Howell v. State ex. rel. Goodrich*, 34 So. 2d 142, 144 (Ala. 1948) (noting that, under the precursor to Ala. Code § 20-2-93, forfeiture actions had to be instituted "in the name of the State on relation of the solicitors of the state"); *In re One Ford Auto.*, 87 So. 842, 842 (Ala. 1921) (reversing order of forfeiture because solicitor filed forfeiture petition on behalf of state without a preliminary seizure by state authorities). Likewise, no court appears to have interpreted the Supreme Court of the United States precedent Claimant cites to impose a turnover requirement.

Court of Civil Appeals does not undermine the holding of *Green* as applied here.[8]

Accordingly, *in rem* jurisdiction vested in this court no later than February 2012.

**B.     The Sufficiency of the Complaint**

Having resolved the jurisdictional question, the court turns to whether the forfeiture complaint states a claim in compliance with Rule G(2) of the Supplemental Rules and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Claimant argues, most basically, that the complaint fails because it does not sufficiently allege a nexus between the *res* and a violation of 21 U.S.C. § 841(a).  According to Claimant, the Government contends only that the *res* "is tied to illegal drug sale(s)."  (Doc. # 9.) Claimant's challenge fails, however, because the Government's contentions satisfy the standard established by Supplemental Rule G(2).

Supplemental Rule G(2)(f) demands that a forfeiture complaint "state sufficiently detailed facts the support a reasonable belief that the government will be able to meet its burden of proof at trial."  To succeed in a civil forfeiture case at trial, the United States must prove by a preponderance of the evidence that the property is

---

[8] *Ex parte Bingham* only confirms that adoptive forfeiture's validity does not depend "upon the participation of federal authorities in the seizure itself."  --- So. 3d ---- (Ala. Civ. App. 2012), 2012 WL 29172, at *2.  And however much the distinction drawn in *Alexander v. City of Birmingham* calls *Green* into question, it does so only for property seized after a search pursuant to a warrant, not for property seized, as in this case, after a warrantless search.  --- So. 3d ---- (Ala. Civ. App. 2012), 2012 WL 2477914, at *6 (holding that jurisdiction over *res* vested in state court immediately upon seizure based on language in the warrant that authorized the search and led to the seizure).

10

subject to forfeiture. 18 U.S.C. § 983(c)(1). Because the Government seeks forfeiture based on 21 U.S.C. § 881(a)(6), which calls for forfeiture of property used in or traceable to the sale of illegal drugs, it must also demonstrate at trial that there was "a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). The Government may rely on circumstantial evidence, hearsay, and evidence gathered after the filing of the complaint; the court evaluates the evidence "with a common sense view to the realities of normal life." *United States v. $291,828*, 536 F.3d 1234, 1237 (11th Cir. 2008) (internal quotation marks omitted).

The complaint alleges facts sufficient to support a reasonable belief that the *res* was substantially connected to the sale of illegal drugs. Upon being stopped by law enforcement, Mr. Pettaway admitted to smoking marijuana less than two hours earlier, the smell of marijuana emanated from the vehicle, and the trained canine called to the scene alerted to the presence of drugs on the cash. *See United States v. $84,615*, 379 F.3d 496, 501–02 (8th Cir. 2004) (affirming district court's order of forfeiture based on possession of a large amount of cash, a small "user amount" of marijuana, and a trained dog's alert to drugs on the cash). Additionally, both men had aliases, and the vehicle was a rental car. *See United States v. Jones*, No. 2:10-cr-13-MEF, 2010 WL 3362075, at *4 (M.D. Ala. June 11, 2010) (considering use of rental car as one factor supporting reasonable suspicion that motorists were transporting drugs).

Though there is nothing criminal about carrying large sums of money, even in unconventional ways, the characteristics of the *res* and its packaging offer the best support for the reasonable belief that a substantial connection existed between the *res* and illegal activity. First, Claimant carried approximately twice the amount of cash he first told officers he was carrying; his bag contained almost $20,000 rather than the $8,000 to $10,000 he first indicated. Second, the money was divided into stacks, secured with rubber bands, and stashed inside a microwave popcorn box carried in his backpack. "A common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack." *United States v. $242,484*, 389 F.3d 1149, 1161 (11th Cir. 2004). The facts sufficiently and plausibly support a reasonable belief that the *res* was furnished or intended to be furnished in exchange for illegal drugs, or that it was otherwise traceable to the illegal drug trade.

## V.  CONCLUSION

Accordingly, it is ORDERED that Claimant's motions to dismiss (Docs. # 9, 13, & 19) are DENIED. Plaintiff's motion to strike (Doc. # 40) is DENIED as moot.

DONE this 19th day of November, 2012.

                                                      /s/ W. Keith Watkins  
                                    CHIEF UNITED STATES DISTRICT JUDGE